IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                          :
                                :    CHAPTER 7
THAD M. HOLMES                  :
                                :    CASE NO. 1:12-bk-01801-RNO
                                :
                    Debtor      :
*********************************************************************************
ROBERTA A. DeANGELIS            :
UNITED STATES TRUSTEE           :
                                :
                    Movant      :
                                :
        v.                      :
                                :
THAD M. HOLMES                  :
                                :
                  Respondent    :

**OPINION**[1]

The U.S. Trustee moved to dismiss the Chapter 7 case of Thad M. Holmes.  The Motion

avers that the Debtor's case is presumptively abusive pursuant to § 707(b)(2), or in the

alternative, that the totality of circumstances evidence an abuse of the Code's protections, under

§ 707(b)(3).  For the reasons stated herein, the motion is granted in part and denied in part.

**I.      JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This

is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**II.     FACTS AND PROCEDURAL HISTORY**

Thad M. Holmes ("Debtor") filed his voluntary petition for Chapter 7 relief on March 29,

2012.  Accompanying his petition were his original Schedules A through J, Statement of

---

[1]      Drafted with the assistance of Joseph C. Barsalona II, Esq., Law Clerk.

Financial Affairs, Statement of Intention, and Statement of Current Monthly Income and Means-Test Calculation ("Original MTF").

An individual who is consistently mentioned within these documents, and throughout this matter, is Mr. Bradley T. Jones ("Jones"). Mr. Jones has been the housemate of the Debtor since 2000, and a companion to him for longer than that. *See* Debtor's Br. in Opp. to the Mot. of the U.S. Trustee to Dismiss Pursuant to Section 707(b) of the Bankr. Code, Sept. 18, 2012, 2 (stating Mr. Jones is Debtor's "friend and companion"); Trial Tr. 67:21 (Jones testifies he is a "roommate" of Debtor); Trial Tr. 72:23 (Debtor testified that he and Jones were "together" longer than the five years they have lived in the same house). Notwithstanding their living arrangement, the two are not subject to a formal civil union or any other legal relationship. Trial Tr. 67:22-23; 76:5-10.

There are several numerical figures on the Debtor's schedules which are at issue in this case which should be introduced now to avoid later confusion. On his Schedule H – Codebtors form, the Debtor lists six debts he shares with Jones, which include two credit cards, two car loans, and one home equity loan. On the Schedule I – Current Income of Individual Debtor, Jones' income is listed in the "spouse" column. Debtor's counsel represented to the Court, during trial, that he was compelled to put Jones' data in the spouse column because "that's all our software allows in a circumstance like this." Trial Tr. 37:16-17. Nevertheless, the amount listed for Jones' "Monthly gross wages, salary, and commissions" is $4,766.67, and his "Total Net Monthly Take Home Pay" is $3,846.42. Also listed on Debtor's Schedule I is the figure for Debtor's "Payroll taxes and social security," listed as $602.94.

Debtor's Schedule J – Current Expenditures of Individual Debtor includes certain

2

expenditures that are also relevant to this case. Besides the rudimentary categories such as "Food" and "Clothing," the Debtor lists unique, added-in expenses such as $230.00 for "Cellular Phones," $65.00 for "Parking Expenses," $350.00 for "Lunches required for work," and $200.00 for "Pet Maintenance."

The Original MTF filed with the petition did not include Mr. Jones. Also absent from the form are any numerical figures past line 16. However, on line 14 the Debtor lists a "household size" of two (2) people, without any further explanation.

The U.S. Trustee filed a Statement of Presumed Abuse on May 2, 2012. In an apparent attempt to assuage the presumption of abuse, the Debtor filed an Amended Statement of Current Monthly Income and Means-Test Calculation ("first amended MTF") on May 21, 2012. In contrast to the previous version, the first amended MTF listed Mr. Jones' gross income in the "Spouse's Income" column. This comports with Mr. Jones' placement in the Debtor's Schedule I, which lists Jones' income in the same manner. Furthermore, the main difference between the first and second versions of the MTF was the answer given in line 52, i.e. the "Initial presumption determination": The Original MTF did not provide an answer while the first amended MTF checked the box indicating that a presumption of abuse arises.

Two weeks after the first amended MTF came onto the docket, the U.S. Trustee filed his Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(2) or (3) ("Motion"). The Motion avers that the Debtor's case is presumptively abusive under 11 U.S.C. § 707(b)(2)[2] because his "Monthly disposable income" listed on line 50 ($428.88) should be increased by $120.00, based

---

[2]        Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

on an error in the "National Standards: health care" section of the form. In the alternative, the Motion alleges that the Debtor's case is an abuse under a § 707(b)(3) totality-of-the-circumstances analysis. To support this contention, the U.S. Trustee claims a number of the Debtor's scheduled household expenses are unreasonable and unnecessary.

The Debtor filed his Answer to the Motion on June 21, 2012. Along with general answers and denials to the Trustee's averments, the Answer contained a number of affirmative defenses. The defenses included that "[t]he monthly income and monthly expenses of Debtor's companion were provided pursuant to rule or custom of this Court" and "Debtor's companion has no legal obligation to assist Debtor with any of his debts other than the debts that are joint between them." Debtor's Answer 3. Three months later, on September 18, 2012, the Debtor filed his Brief in Opposition to the Trustee's Motion to Dismiss. The Brief reiterates the Debtor's argument that Mr. Jones has no legal obligation to contribute his income to pay the Debtor's creditors. Debtor's Br. in Opp'n to U.S. Trustee's Mot. to Dismiss 2-5. It avers the exclusion of Mr. Jones' income would leave the Debtor in a deficit position, notwithstanding the first amended MTF's statement to the contrary, and thus the presumption of abuse does not arise. *Id.* at 3-5. Moreover, in regards to the Trustee's § 707(b)(3) totality-of-the-circumstances abuse claim, the Debtor rebuts the claim through a methodical discussion of the factors that support such a finding; these factors are commonly known as the *Miller* factors after the case from which they derive, *U.S. Trustee v. Miller (In re Miller)*, 302 B.R. 495 (Bankr. M.D. Pa. 2003).

The first hearing on the Motion was held on September 20, 2012. At that hearing, I was critical of the Debtor stating one set of facts in the first amended MTF (including Mr. Jones' income) and giving a completely different theory in the Answer and Brief (it would be illegal to

4

compel Mr. Jones to contribute to the Debtor's case). Debtor's counsel expressed to the Court that a further amendment had not been filed because there existed no document which proves, explicitly, Mr. Jones' monthly contribution to household expenses. To help solve this discrepancy, I ordered the Debtor to file a second amended B22A within seven days and continued the hearing.

The Debtor answered the Court's request and filed a second Form B22A Statement of Current Monthly Income and Means-Test Calculation ("second amended MTF") on September 27, 2012. The second amended MTF still included Mr. Jones' income in the "spouse" column, but at a reduced amount of $2,991.41. Line 25 of the form, "Other Necessary Expenses: taxes," is listed as $801.52. Additionally, line 31, "Other Necessary Expenses: health care," is listed as $307.43. Most important to this case, line 50, the amount of "Monthly disposable income" that the Debtor should have available to pay towards creditors, is listed as negative $705.35, a number quite different from the positive $428.88 listed on the first amended MTF. Finally, the second amended MTF included the following supplemental page which speaks for itself:

> "Gross pay" (line 3) shows monthly contribution of unmarried, same-sex housemate. Amount calculated by subtracting from housemate's net pay as shown on Schedule I, a monthly amount provided by Debtor on analysis that will be provided to counsel for United States Trustee, which reflects housemate's monthly expenditures exclusively for himself. Added back to the grand total of the "expense subtaction" [sic] is amounts [sic] housemate spends on himself that are already reflected in Means Test, specifically interest expense on secured debt and medical insurance.

Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, Sept. 27, 2012, 9.

On December 5, 2012 the U.S. Trustee filed his Pre-Trial Summary of Expected Testimony and Proposed Conclusions of Law ("Pre-Trial Brief"). Therein, the U.S. Trustee

5

avered three errors on the second amended MTF that gives a presumption of abuse under

§ 707(b)(2): (1) the total contribution by Mr. Jones listed in line 3, column b, should be higher;

(2) the tax expense on line 25 should be lower; and, (3) the monthly health care expense on line

31 should be lower.  Trustee's Br. 3-5.  The following chart shows the amounts appearing on

each B22A, which are at issue, and includes the figures the U.S. Trustee alleges should appear:

|  | Original MTF | First Amended MTF | Second Amended MTF | Trustee's proposed amount |
|---|---|---|---|---|
| Mr. Jones' contribution; Line 3 | N/A | $4,766.67 | $2,991.41 | $3,525.02 |
| Taxes; Line 25 | N/A | $1,337.55 | $801.52 | $419 |
| Health Care; Line 31 | N/A | $307.43 | $307.43 | $187.43 |
| Disposable Income; Line 50 | N/A | $428.88 | ($705.35) | $332.13 |

In regards to his § 707(b)(3) claims, the U.S. Trustee's brief reiterates the same arguments from

the underlying Motion, namely that the schedules list expenses that are unnecessary and

unreasonable.  Id. at 5-8.

A trial on the merits was held on January 31, 2013.  The Trustee's first witness was Mr.

James Farley, a bankruptcy analyst for the U.S. Trustee's office and a certified public

accountant.  Trial Tr. 10-13.  Mr. Farley testified he was responsible for reviewing the Debtor's

case, including all of the financial documents provided by the Debtor.  Id. at 10:17-19.  His

testimony on those documents is important to the determination of this case.

One of these documents is a summary of Mr. Jones' gross income, "essentially his pay

stubs," that was admitted as U.S. Trustee's Exhibit 3.  Trial Tr. 17:22-24.  The second is a ledger

6

of the alleged expenses that are personal to Mr. Jones, created by the Debtor, for the six months prior to the filing of the case; this document was admitted as U.S. Trustee's Exhibit 4. Trial Tr. 21:1-3. Using the information provided by the Debtor, Mr. Farley then created two new documents with independent calculations: admitted as Exhibits 11 and 12. Trial Tr. 40:5-10; 22:1-20. Exhibit 11 is a calculation of Mr. Jones' monthly income based on Exhibit 3. Trial Tr. 18:19-20. Mr. Farley took Mr. Jones' gross income and subtracted monthly expenses, for example social security and health insurance, to come to a "net" monthly income of $3,684.89. Trial Tr. 18:23-25; 19:1-4; Trustee's Ex. 11. That "net" monthly income is alleged to have been for the six-month means test period. Trial Tr. 19:5-11. After that calculation, Mr. Farley was tasked by the U.S. Trustee's office to discern whether all the "net" income was contributed to the household or whether some of it was used on expenses personal to Mr. Jones. Trial Tr. 20:14-19. That is where Exhibit 12 comes in.

Exhibit 12, another creation of Mr. Farley, places all of the expenses of Mr. Jones from Exhibit 3 into one column; these include cigarettes, clothing, grooming, etc. Trial Tr. 21:20-24. In a separate column, Mr. Farley extracts those expenses he believes are strictly personal to Mr. Jones and do not fall within standard IRS allowances of household expenses. Trial Tr. 23:5-11. These four amounts are "cigarettes" for $174.19, "Education" for $95.00, "Beer" for $260.65, and "Credit Cards" for $429.44. Trustee's Ex. 12. Every other expense of Mr. Jones that the Debtor provided to the U.S. Trustee, however, was deemed a household expense. Trustee's Ex. 12. These alleged household expenses include purchases by Mr. Jones for "Clothing" ($132.88), "Grooming" ($83.91), and "Medical" ($576.78). *Id.* It was Mr. Farley's contention that the majority (nine of the thirteen categories) of Mr. Jones' expenses during the six-month period fit

7

within the IRS standard allowances, and thus are household expenses which should be contributed towards the payment of the Debtor's creditors. Trial Tr. 25:10-14.

Mr. Farley then took the monthly average of the extracted four expenses, $159.88, and subtracted it from his calculation of Mr. Jones' "net" income, $3,684.90, to arrive at the total amount the U.S. Trustee states should go towards creditors: $3,525.02. Trial Tr. 26:6-10. The difference between the U.S. Trustee's number, $3,525.02, and the number given by the Debtor, $2,991.41, leaves a difference of $533.60. Trial Tr. 27:15-21. According to the U.S. Trustee, this amount accounts for how much more, per month, Mr. Jones should contribute to pay the Debtor's creditors.

Mr. Jones was the next witness to take the stand and his testimony was brief. He first swore, under oath, that Trustee's Exhibit 4 was an accurate account of his personal expenses from October 1, 2011 through March 31, 2012. Trial Tr. 68:20-25. Furthermore, he testified that the only two debts he and the Debtor share are the first and second mortgage on their residence. Trial Tr. 69:13-25. The two men used to share a credit card but did not do so during the six-month means test period. Trial Tr. 69:19-22.

The Debtor was the final witness at trial. Like Mr. Jones, he too testified that U.S. Trustee's Exhibit 4 is a ledger of all personal expenses of Mr. Jones that did not go towards household expenses. Trial Tr. 74:5-25. The Debtor testified that he created such ledgers through the "Quicken" program for many years before his bankruptcy in order to keep track of the individual finances of the two men. Trial Tr. 75:1-9. Furthermore, he supported Mr. Jones' testimony that the only joint debts they share are the two mortgages on the residence. Trial Tr. 80:18-23.

During testimony, the Debtor described a number of his current medical problems that may require payment beyond his insurance coverage. These medical issues include diabetes, neuropathy problems with his feet, and sleep apnea. Trial Tr. 82:8-17. He also stated that Mr. Jones has a heart condition which compelled him to see a cardiologist. Trial Tr. 82:2-7. The Debtor testified that despite his insurance coverage, he still is responsible for ten percent of each medical bill he receives. Trial Tr. 83:3-9. No expert medical testimony was offered; nor was the Debtor's medical testimony objected to.

Further testimony revealed that one of the main reasons for the Debtor's Chapter 7 filing was his ever increasing amount of credit card debt. Trial Tr. 86:1-14, 20-25; 87:1-10. In fact, he was the defendant in "one or more" lawsuits filed by the credit card companies prior to his filing. Trial Tr. 85:25; 86:1-3. He testified that he was current on all of his credit card payments up until the summer of 2011. Trial Tr. 86:11-16.

The majority of the Debtor's testimony revolved around his Schedule J and the basis behind the expenses listed thereon. In regards to his $230.00 cell phone expense, four people are on the plan: himself, Mr. Jones, Mr. Jones' mother, and the Debtor's mother. Trial Tr. 87:24-25; 88:1-3. The Debtor provides a cellphone for his mother, he maintains, in case of emergencies and the long distance she lives from her son. Trial Tr. 88:1-24. As for his $410.00 entertainment expense, he stated this category was a potpourri of different activities including going to the movies, renting movies, and "going on cruises." Trial Tr. 89:23-25; 90:1-3. He also included some of the expenses he incurred when he visits his mother in Phoenix, Arizona, into the "entertainment" category. Trial Tr. 90:22-25.

The next category of expenses discussed was the $65.00 parking expense. This was

9

treated as another general category by the Debtor in which he would include parking in a garage, parking on the street, or parking in an airport parking lot when he visited his mother. Trial Tr. 91:18-24. Interestingly, the Debtor included his plane tickets to visit his mother in Arizona in his "parking" expenses. Trial Tr. 91:22-24.

The Debtor's $350.00 "lunches" expense also came up during testimony. Here, the Debtor admitted that he places all of his "dining out" expenses into this category, and not just his lunches during work hours. Trial Tr. 92:5-21. He testified that cooking at home gets "boring after a while" and so he and Mr. Jones routinely dine out instead of stay in. Trial Tr. 92:24-25; 93:1-2.

The Debtor's testimony next turned to an explanation for the reasons he filed for bankruptcy protection. According to him, the main factor in his decision to file Chapter 7 was the civil suits brought against him by Discover Card and other credit card issuers. Trial Tr. 95:1-5. He stated these suits were not due to the cruise he took with Mr. Jones in the early part of 2012, though, because only Mr. Jones' income went towards paying for it. Trial Tr. 95:13-24. Furthermore, another factor weighing in favor of filing his petition was his fear over job security. Trial Tr. 99:24-25; 100:1-12. He is employed at Health South, performing maintenance of the hospital and some medical equipment. *Ibid.* Schedule I indicates he was employed there for eight years at the time of the petition filing. Debtor's Schedule I. The Debtor testified the fact that wages have remained constant gave him cause for concern. Trial Tr. 100:13-16. He also testified of his worry that Health South might contract out its maintenance services. Trial Tr. 100:8-12.

During cross-examination, the U.S. Trustee challenged the Debtor's expenses on most of

his original schedules and subsequent filings. The U.S. Trustee took issue specifically with the $12,000.00 loan the Debtor took from his 401(k) to pay for a new car. Trial Tr. 112:1-14; 113:3-5. This 401(k) plan was one that Debtor admitted to not listing on his Schedule B – Personal Property. Trial Tr. 112:22-25; 113:1-2. The U.S. Trustee also persuaded the Debtor to change his testimony in regards to insurance coverage: in actuality Mr. Jones was never on the Debtor's insurance, instead, it was the Debtor who was covered under Mr. Jones' insurance for three months. Trial Tr. 122:1-11.

Over the remaining course of the Debtor's testimony, the U.S. Trustee went on to dispute a broad range of other expenses provided to the U.S. Trustee after his own inquiry. In regards to a $299.00 new phone expense, it was the Debtor's contention that he needed a new phone because his last device would "cut out on [him]." Trial Tr. 125:1-18. In regards to expenses incurred during the Debtor's and Mr. Jones' cruise, approximately four months before the Debtor filed, he admitted to charging over $1,000.00. Trial Tr. 136:8-17. Furthermore, the Debtor testified that he needs a telephone land-line, in addition to his cell phone, so that he can send facsimile transmissions from home. Trial Tr. 150:8-16.

The parties submitted their post-trial briefs on March 19, 2013, and April 3, 2013, respectively. This case is now ripe for disposition.

## III.   DISCUSSION

The Motion seeks dismissal of the Debtor's case on the theory of a presumption of abuse pursuant to § 707(b)(2), or, alternatively, that granting him a discharge would be an abuse based on the totality of the circumstances under § 707(b)(3). For the reasons stated below, I find that no presumption of abuse arises, and thus the § 707(b)(2) claim fails. However, looking at the

entire spectrum of events and circumstances surrounding the case, I find that the Debtor's financial situation demonstrates abuse pursuant to § 707(b)(3), warranting dismissal or conversion to another chapter.

### A.     No Presumption of Abuse Arises

Section 707(b)(1) grants authority to the Court, on motion and after notice and a hearing, to dismiss a Chapter 7 case, or with the debtor's permission convert to another chapter, if granting relief would be an "abuse." 11 U.S.C. § 707(b)(1). To aid the Court in its abuse analysis, § 707(b)(2) sets forth a formula, commonly known as the Means Test, to calculate a debtor's monthly disposable income that is ostensibly available to pay creditors. If the debtor's sixty-month disposable income is outside the range of a preset amount, then a presumption of abuse arises. 11 U.S.C. § 707(b)(2)(A)(i).

A central piece to the Means Test calculation is the debtor's "currently monthly income" ("CMI"). 11 U.S.C. § 707(b)(2)(A)(i), (B)(i), (B)(iv), (C). The Code defines CMI as:

> (A)     . . . the average monthly income from all sources that the debtor receives . . . derived during the 6-month period ending on—
>
> (i)     the last day of the calendar month immediately preceding the date of the commencement of the case . . .; and
>
> (B)     includes any amount paid by any entity other than the debtor . . ., on a regular basis for the household expenses of the *debtor* . . . .

11 U.S.C. § 101(10A) (emphasis added). Form B22A lines 2 to 12 incorporate the entirety of the CMI definition in "Part II – Calculation of Monthly Income For § 707(b)(7) Exclusion." Line 8 is the portion of the form that specifically includes household expenses paid by other entities living with the debtor ("Household Expenses Amount").

12

The Household Expenses Amount is crucial to a debtor's case: It is the only portion of a non-filing spouse's, family member's, or any other housemate's income included in CMI. *See In re Anderson*, 444 B.R. 505, 509 (Bankr. W.D.N.Y. 2011) ("[CMI] includes any amount paid by the debtor's girl friend [sic] for household expenses on a regular basis."); *In re Fitzgerald*, 418 B.R. 778, 784 (Bankr. D. Conn. 2009) (court refused to include non-filing roommate's income as part of debtor's CMI by more than roommate's portion of monthly rent); *In re Baldino*, 369 B.R. 858, 861 (Bankr. M.D. Pa. 2007) ("[A] non-filing spouse's income is included in [CMI] only in the amount that is regularly contributed to household expenses."); *Stapleton v. Athens (In re Athens)*, No. 1-06-bk-02293MDF, 2007 WL 6376132, at *7 (Bankr. M.D. Pa. Aug. 1, 2007) ("[N]on-filing spouse's income and expenses is relevant when determining whether the non-filing spouse is bearing an appropriate proportion of household expenses . . . ."). The inquiry into the specific amount contributed by the non-filing individual is "fact specific and subject to interpretation." *In re Trimarchi*, 421 B.R. 914, 918 (Bankr. N.D. Ill. 2010) (citing *In re Travis*, 353 B.R. 520, 526 (Bankr. E.D. Mich. 2006)).

Here, the .S. Trustee claims a presumption of abuse arises due to three specific errors made on the Debtor's Form B22A: 1) the understatement of Mr. Jones' contribution to household expenses by $533.61; 2) the overstatement of his tax expense by $382.52; and, 3) the overstatement of amount for his health care expense by $120.00. Trial Tr. 8:7-24; U.S. Trustee's Proposed Findings of Fact and Conclusions of Law, 3-5, Mar. 19, 2013 (hereinafter "Trustee's Post-Trial Brief"). When these corrections are made, the Debtor's stated disposable income of negative $705.35, will change to positive $330.78, creating a presumption of abuse. Trustee's Post-Trial Brief, 9.

13

During trial and in his post-trial brief, the Debtor acquiesces in two of the three arguments put forth by the U.S. Trustee. First, the Debtor states in his post-trial brief that he "concede[s] the error . . . on the health insurance premiums." Debtor's Post-Trial Br. 2. On its own, this admission weighs in favor of the U.S. Trustee. Secondly, between Mr. Farley's testimony and the Debtor's failure to rebut the U.S. Trustee's evidence on the matter, the tax issue goes in the U.S. Trustee's favor. Being a certified public accountant, I found Mr. Farley's testimony to be credible and of great assistance in determining the tax errors found on the Debtor's second amended MTF. *See* Trial Tr. 28-34 (details of tax analysis). The Debtor did not rebut this evidence with any expert evidence of his own or challenge any specific portion of the testimony via cross-examination. Instead, in his post-trial brief, the Debtor states that he "do[es] not have evidence to refute Mr. Farley's numerical conclusions with respect to the income tax." Debtor's Post-Trial Br. 3. Thus, I find that the Debtor's tax expense was overstated on his second amended MTF. Applying these findings to the second amended MTF, the health insurance amount, $120.00, and the tax amount, $382.52, will be added to the Debtor's disposable income, negative $705.35, for a current disposable income of negative $202.83.

The disposition of the presumption of abuse issue, then, depends on Mr. Jones' monthly contribution to household expenses, and to which I turn now.

In the past, this Court has been skeptical of compelling a non-filing spouse to pay the respective debts of his/her filing spouse. *See Baldino*, 369 B.R. at 862 ("I have not found a provision in the Bankruptcy Code which mandates a non-filing spouse to live modestly or to devote his or her income to the repayment of the filing spouse's debts.").

14

Here, the Debtor and his roommate, Mr. Jones, have no legal relationship which could arguably combine their assets or liabilities. Mr. Jones and Mr. Holmes are not part of a civil union, nor do they plan to form one in the near future. Trial Tr. 67:22-23; 76:5-7. Pennsylvania has not yet legalized civil unions or same-sex marriage. *See* 23 Pa.C.S.A. § 1704 (2013) (defining marriage between one man and one woman). Furthermore, the Supreme Court's recent decision of *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), leaves any decision to change the state law definition of marriage in the hands of the state legislature. *U.S. v. Windsor*, 133 S. Ct. 2675, 2696 (2013) (Roberts, J., dissenting) ("We may in the future have to resolve challenges to state marriage definitions affecting same-sex couples. That issue, however, is not before us in this case, and we hold today that we lack jurisdiction to consider it in the particular context of *Hollingsworth v. Perry*."). Therefore, there is no debate that the Debtor and Mr. Jones have separate property rights and liabilities which will not be interfered with by this Court.

Without a legally binding relationship, the U.S. Trustee's argument on Mr. Jones' alleged contribution becomes more attenuated and unpersuasive. The Debtor provided a spreadsheet to the U.S. Trustee listing Mr. Jones' personal expenses separated into thirteen different categories. Debtor's Ex. 4. Mr. Farley's analysis of Mr. Jones' contribution, as seen on Exhibit 12, lists only four items that are "strictly personal" to Mr. Jones: "Cigarettes," "Education," "Beer," and, "Credit Cards." Trustee's Ex. 12; Trial Tr. 21:8-12. Yet, categories that allegedly should be considered in the Household Expense Amount, according to Mr. Farley, include "Clothing," "Grooming," and, "Medical" expenses. Trustee's Ex. 12. On their face, these expenses look more like strictly personal expenses to Mr. Jones rather than an amount that should go to Mr. Holmes' creditors. Additionally, Mr. Farley included the entire sum in the "Miscellaneous"

15

category, $1,061.01, into the category of expenses that should go towards the Debtor's creditors. *Id.* Without specific designations for these expenses, it is impossible to discern whether they should go towards the Household Expenses Amount of the Debtor or are strictly personal to Mr. Jones. I find that it is better precedent to respect the individual property rights of the non-filing roommate and to not include a large, unknown amount into the payment towards the filing roommate's debts.

It is the opinion of this Court that the Debtor had a good faith basis when designating the separate expenses of his roommate, and therefore all thirteen different categories shall be deemed strictly personal to Mr. Jones. The Bankruptcy Code honors the individual property rights of individuals and the U.S. Trustee's argument does not persuade me to rule otherwise.

In mathematical terms, the $533.61 amount proposed by the U.S. Trustee for Mr. Jones' contribution will not be added to the Debtor's disposable income. Thus, the Debtor's disposable income remains negative $202.83 and the presumption of abuse does not arise. Accordingly, the U.S. Trustee's Motion is denied in this regard.

**B.     The Totality of the Circumstances Demonstrates Abuse Under 707(b)(3)**

Under section 707(b)(3), the Court is required to consider whether "the debtor filed the petition in bad faith; [or] the totality of the circumstances . . . of the debtor's financial situation . . . " in order to decide if the debtor is abusing the Code. 11 U.S.C. § 707(b)(3)(A)-(B). As the terms "bad faith" and "totality of the circumstances" are not defined under the Code, our district and others utilize eleven factors to evaluate the relevant facts and decide whether an abuse exists. *See, e.g.*, *DeAngelis v. Lanza (In re Lanza)*, 450 B.R. 81, 87-88 (Bankr. M.D. Pa. 2011); *DeAngelis v. Ramsay (In re Ramsay)*, 440 B.R. 85, 91 (Bankr. M.D. Pa. 2010); *Stapleton v.*

*Walker (In re Walker)*, 381 B.R. 620, 624-25 (Bankr. M.D. Pa. 2008). Those eleven factors are, to wit:

> (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statements of current income and expenditures reasonably and accurately reflect his true financial condition; (5) whether the bankruptcy petition was filed in bad faith; (6) whether the debtor engaged in eve of bankruptcy purchases; (7) whether the debtor enjoys a stable source of future income; (8) whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code; (9) whether there are state remedies with the potential to ease his financial predicament; (10) the degree of relief obtainable through private negotiations; and, (11) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1980); *Ramsay*, 440 B.R. at 91; *Walker*, 381 B.R. at 625. It is the U.S. Trustee's burden to prove an abuse under § 707(b)(3) by a preponderance of the evidence. *DeAngelis v. Hoffman (In re Hoffman)*, 413 B.R. 191, 194 (Bankr. M.D. Pa. 2008).

### i. Factors That Weigh Against a Finding of Abuse

Based on the record before me, the factors that weigh against a potentially abusive filing are one and nine. First, the Debtor indicated at the hearing that he suffers from significant medical problems: he is diabetic, he has neuropathy in his feet, and has sleep apnea. Trial Tr. 82:8-25. He testified that his insurance co-payments were adding up. Trial Tr. 83:1-11. He also testified to collection actions by his credit card companies, which he weighed in his decision to file for bankruptcy. *Ibid.* Considering that these problems occurred relatively close in time to the bankruptcy filing, I find that one factor leading to the filing was the Debtor's "sudden

17

illness."

In addition, there seems to be no state-court remedies available that would assuage the financial problems of the Debtor.  Bankruptcy protection appears to be the best way for him to work out the issues with his creditors, even if Chapter 7 is not the proper context.  Thus, factor nine, "whether there are state remedies with the potential to ease his financial predicament," weighs in his favor.

### ii.       Factors That Indicate an Abuse of Chapter 7

While the above-mentioned factors do not demonstrate abuse, the majority of the factors weigh against the Debtor's position.  I will discuss each factor that supports my disposition of the Motion.

### a.       The Debtor Made Consumer Purchases Far in Excess of his Ability to Repay and Eve of Bankruptcy Purchases

The record is clear that the Debtor made consumer purchases "far in excess of his ability to repay" before he filed his petition.  First, Trustee's Exhibit 7 shows a phone bill for $505.85 due on March 1, 2012, i.e. the same month of the chapter 7 filing.  Trial Tr. 124:12-21.  This included an equipment charge of $299.15 for new phones for the Debtor and Mr. Jones.  Trial Tr. 124:16-20.  While the Debtor claims he needed the phone because his old one "just [didn't] work right," this statement lacks credibility or practicality.  Trial Tr. 125:1-9.  Debtor did not present information or evidence to the Trustee about the need for a phone, and nothing of the sort was admitted at trial.  Therefore, I find this consumer purchase demonstrates abuse of the Code.  Another troubling consumer purchase by the Debtor relates to the Carnival One Cruise in late December 2011.  Trial Tr. 134:10-15.  Although Debtor testified that Mr. Jones paid for the cruise tickets, the Debtor still made over $1,100.00 worth of purchases on his personal credit

18

card during the cruise. Trial Tr. 134:3-9, 21-25. What is particularly troubling about these purchases is that the Debtor admitted to having been sued by Capital One that summer, yet he continued to make purchases on the card. Trial Tr. 136:8-17. Nevertheless, I find that charging hundreds of dollars for a vacation within the look-back period is an eve of bankruptcy purchase which militates against a finding of good faith.

### b.    The Debtor's Budget is Excessive or Unreasonable

The Debtor's original schedules and subsequent amendments and statements reveal a budget that is excessive and unreasonable considering his present financial condition. First, Debtor's Schedule G reveals a cellphone bill of $230.00 per month. He testified that the bill is as high as it is because there are four people covered by it: the Debtor, Mr. Jones, the Debtor's mother, and Mr. Jones' mother. Trial Tr. 87:24-25; 88:1-24. I appreciate the Debtor's generosity in providing cellphones for his mother and Mr. Jones' mother, however, this extra expense cannot be undertaken in lieu of payment towards the Debtor's creditors.

Additionally, the Debtor's entertainment expenses are unreasonable considering his current financial circumstances. On his Schedule J, he lists a "Recreation, clubs and entertainment, newspapers, magazines, etc." expense as $410.00. Debtor's Schedule J. At trial he testified that this amount includes "going to [the] movie[s], renting a movie, [and] going on cruises." Trial Tr. 89:23-25. On that same schedule he lists a "Dish TV" monthly expense of $103.22. Debtor's Schedule J. Adding the two together, the Debtor pays $513.22 a month on entertainment, or more than $6,000.00 a year. I find this expense to be unreasonable and excessive.

Finally, I find the figure listed as "Lunches required for work" to be excessive. The

Debtor stated that the $350.00 expense included not only his lunches, but instead "mostly my whole dining out [expense]." Trial Tr. 92:5-9. I note that this expense is in addition to his regular "Food" expense of $517.10. Debtor's Schedule J. The standard IRS food allowance for a two-person household is $537, making the Debtor's "Food" expense acceptable but not his "lunches required for work" expense. Trustee's Pre-Trial Br. ¶ 48. Thus, the $350.00 amount is excessive for a Chapter 7 debtor.

### c. The Debtor Enjoys a Stable Source of Future Income

The Debtor has worked in general maintenance for Health South for over eight years. Trial Tr. 96:22-23. Although he has witnessed layoffs at his company, his job security has never been questioned and his wages remain steady. Trial Tr. 97:13-25; 98:1-12; 99:23-25; 100:1-16. Considering that no evidence shows otherwise, I find that the Debtor enjoys a stable source of future income from his position at Health South.

### d. The Debtor is Eligible for an Adjustment of His Debts Through Chapter 13

If the Debtor reduces his monthly expenses, I agree with the U.S. Trustee that Mr. Holmes is eligible for Chapter 13 relief. *See* Trustee's Pre-Trial Br. ¶ 76 (states the proposition verbatim). This is true even when limiting Mr. Jones' contribution in a potential Chapter 13 plan to any regular contributions to household expenses *only*. Hence, if he opts to convert to Chapter 13, rather than allow the dismissal of his case entirely, the Debtor and his counsel will presumably submit amended schedules showing the necessary change in expenditures consistent with a Chapter 13 debtor.

### e. There is a High Degree of Relief Available Through Private Negotiations

20

Mr. Holmes testified that some of his creditors had filed lawsuits against him for not paying his credit card bills. Trial Tr. 102:1-8. These creditors can be ascertained from his Schedule F – Creditors Holding Unsecured Nonpriority Claims, which lists sixteen different unsecured creditors all with the basis of their claim being "credit card purchases." Debtor's Schedule F. The Debtor testified that lump sum settlement offers were given by some creditors prepetition, but he did not have the funds to make the payments at that time. Trial Tr. 102:19-25; 103:1-21. Thus, I find that this factor slightly weighs in favor of the U.S. Trustee's Motion.

### f. The Debtor's Expenses Can be Reduced Significantly

The same unreasonable and excessive expenses I noted in Section III.B.2.b., *supra*, can be reduced significantly in order for the Debtor to pay his creditors through a Chapter 13 plan. Thus, the same facts stated above are relevant in weighing this element in favor of granting the Motion.

## IV. CONCLUSION

A debtor's ability to repay some portion of his unsecured debt through a Chapter 13 plan is an important factor in deciding a § 707(b)(3) motion. *In re Lanza*, 450 B.R. at 87; *In re Lenton*, 358 B.R. 651, 662-63 (Bankr. E.D. Pa. 2006). Here I conclude that by reducing or eliminating some of his unreasonable and unnecessary expenses, the Debtor can fund a Chapter 13 plan which would allow for a significant distribution to his unsecured creditors. This factor, coupled with a balanced consideration of the *Miller* factors, leads me to conclude that allowing the Debtor to remain in Chapter 7 would constitute abuse under the provisions of § 707(b)(3).

Thus, for the foregoing reasons, the Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(2) or (3) is denied in part and granted in part. The Motion is denied to the

21

extent that it seeks dismissal of the case under § 707(b)(2). It is granted in so far as it dismisses

the Chapter 7 case on § 707(b)(3) grounds. An Order will be entered which will, in part, provide

for the dismissal of the Chapter 7 case, unless the Debtor converts to a case under Chapter 11 or

13 within fourteen (14) days.

By the Court,

_____
Robert N. Opel, II, Bankruptcy Judge
**(BI)**

Date: August 21, 2013

22